IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ANNIE TUMMINO, *et al.*,

               Plaintiffs,

v.

MARGARET HAMBURG, *et al.*,

               Defendants.

-----------------------------------------------------------------------X

**CV 12 - 763**

KORMAN, J.

CV-05-0366 (ERK/VVP)

POHORELSKY, M.J.

## PLAINTIFFS' POST-REMAND MOTION AND MEMORANDUM IN SUPPORT TO REOPEN CASE, SUPPLEMENT COMPLAINT AND JOIN DEFENDANT

Plaintiffs hereby respectfully move this Court to reopen the case, supplement the complaint, and add a defendant.

**I.    Plaintiffs Should Be Permitted to Reopen the Case Pursuant to Rule 60(b)**

Plaintiffs respectfully move this Court for an order partially setting aside the judgment in this case and reopening the case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which, in relevant part, allows a court to relieve a party from a final judgment or order for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b) "should be broadly construed to do substantial justice." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal quotation marks omitted). "A motion under Rule 60(b) is directed to the 'sound discretion' of the district court." *Music Deli & Groceries, Inc. v. I.R.S.*, 781 F. Supp. 992, 995 (S.D.N.Y. 1991) (quoting *Nemaizer*, 793 F.2d at 61). While the circumstances of this case are not the typical circumstances in which Rule 60(b) is invoked, Plaintiffs' motion should be granted. Given the events that have transpired since final judgment was rendered, reopening the case is

1

the most efficient way for Plaintiffs to obtain the relief they have sought since filing this case in 2005.

This case was closed after the Court granted summary judgment in favor of Plaintiffs in 2009 and remanded to the Food and Drug Administration ("FDA") to, *inter alia*, reconsider the Citizen Petition and, within 30 days, make Plan B available to 17 year olds without a prescription. *Tummino v. Torti*, 603 F. Supp. 2d 519, 524 (E.D.N.Y. 2009). Since that time, as detailed in Plaintiffs' memorandum in support of their motions for a preliminary injunction and summary judgment, the FDA has failed to comply. In response to the Court's Order, the FDA has outrageously engaged in virtually the same arbitrary and capricious actions as those that prompted the Court to find that the FDA acted in bad faith and order the FDA to reconsider its decisions. *Tummino*, 603 F. Supp. 2d at 544-50. Thus, these are "exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

Furthermore, Plaintiffs make their motion "within a reasonable time." Fed. R. Civ. P. 60(c). The Citizen Petition and Plan B One-Step application were denied in December of 2011, less than two months ago. Until then, Plaintiffs had been attempting to obtain the substantive relief they seek through a contempt motion addressing the FDA's years of delay in making a decision. Since the FDA's arbitrary and capricious actions in December are the events that have triggered Plaintiffs' need to reopen the case, the FDA cannot claim that reopening the case at this time would prejudice it.

Therefore, Plaintiffs request that the portion of the judgment remanding to the FDA the reconsideration of an over-the-counter switch for Plan B and its generic equivalents be set aside and that the case be reopened.

2

## II.    Plaintiffs Should Be Permitted to Supplement the Complaint Pursuant to Rule 15(d)

Plaintiffs respectfully move this Court for an order pursuant to Rule 15(d) of the Federal Rules of Civil Procedure permitting Plaintiffs leave to file and serve upon Defendants a supplemental complaint. Rule 15(d) provides that upon motion, a court may permit a party to serve a supplemental pleading setting forth any events that happened after the date of the pleading sought to be supplemented. Fed. R. Civ. P. 15(d); *see also Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989). Rule 15(d) is liberally construed and leave should be freely granted. *See, e.g., Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). A court should allow leave to supplement absent undue delay, bad faith, dilatory tactics, unfair prejudice, or futility. *Id.* Because those factors are absent here, Plaintiffs' motion for leave to file a supplemental complaint should be granted.

### A.    None of the Circumstances that Warrant Denial of Leave are Present.

Plaintiffs move in good faith to supplement their complaint in order to set forth relevant events that have taken place since this Court's Order directing reconsideration of the Citizen Petition. Mere delay, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Given that the events giving rise to the need of a supplemental complaint arose only recently, there was no undue delay, nor can Plaintiffs be said to be acting in bad faith or with a dilatory motive in seeking to amend its complaint at this time. Moreover, if Plaintiffs were not allowed to supplement, they could be forced to bring a new suit, thus exposing all of the parties to needless expense, delay, and duplicative litigation. Thus, Plaintiffs' motion for leave to amend its complaint should be granted.

3

**B.**     **Filing of a Supplemental Complaint after Final Judgment is Proper.**

Filing of a supplemental complaint after final judgment is proper when a plaintiff alleges

that a defendant made continued and persistent attempts to violate the court's earlier ruling.

*Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (1964); *see also Raduga*

*USA Corp. v. U.S. Dep't of State*, 440 F. Supp. 2d 1140, 1150 (S.D. Cal. 2005). In *Raduga USA*

*Corp.*, the court granted leave to file a supplemental complaint alleging that defendants had not

complied in good faith with the court's previous order directing federal consular officials to

render a decision on several immigration petitions. 440 F. Supp. 2d at 1150. Subsequent to the

order, the defendants denied the petitions, and the plaintiffs sought review of those denials. *Id.*

Because the supplemental complaint alleged defendants had not complied in good faith with the

court's previous order, but had instead acted arbitrarily and capriciously in denying the petitions,

leave to supplement was permissible even though final judgment had been rendered. *Id.* at 1151.

Plaintiffs here similarly seek leave to file a supplemental complaint to set forth events

alleged to be arbitrary and capricious behavior by the FDA, including proposed Defendant

Secretary Sebelius. The proposed supplemental complaint demonstrates the agency's continued

and persistent attempts to circumvent this Court's previous order directing proper review of the

Citizen Petition and reconsideration of age and other restrictions for over-the-counter access to

emergency contraception. Thus, as in *Raduga USA Corp.*, leave to file a supplemental complaint

at this time is proper. *See id.*

4

**III.    Plaintiffs Should Be Permitted to Join a Defendant Pursuant to Rules 19, 20 and 21**

Plaintiffs respectfully move this Court for the entry of an order pursuant to Rules 19, 20 and 21 of the Federal Rules of Civil Procedure to join Kathleen Sebelius as a defendant, in her official capacity as Secretary of the U.S. Department of Health and Human Services, and directing service of process upon her. Rule 21 of the Federal Rules of Civil Procedure provides that parties may be added, on just terms, by order of the court at any stage of the action. Fed. R. Civ. P. 21.

A person may be joined in an action if the right to relief asserted against him or her arose out of the same occurrence, or series of occurrences, as the current defendant, and any question of law or fact common to all will arise in the action. Fed. R. Civ. P. 20(a)(2).  Alternatively, a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party to the action if, in the person's absence, "complete relief cannot be accorded among existing parties." Fed. R. Civ. P. 19(a). Joinder is proper, even after final judgment, when it promotes judicial economy and does not prejudice the party sought to be joined. *See City of Syracuse v. Onondaga County*, 464 F.3d 297, 306-10 (2d Cir. 2006); *Clarkson v. Herbert*, 783 F. Supp. 789, 796-97 (S.D.N.Y. 1992).

Because Secretary Sebelius has asserted that she has authority to overrule final FDA determinations and make final decisions regarding over-the-counter status of emergency contraception, based on her statement that "[t]he Secretary of the Department of Health and Human Services is responsible . . . for executing the Federal Food, Drug, and Cosmetic Act," *see* Press Release, Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius (December 7, 2011) (ECF No. 339-1 at 4), it is proper to join her in this action. On December 7, 2011, Secretary Sebelius, in an unprecedented move, directed the FDA to deny the

5

drug sponsor's supplemental new drug application, which sought to make Plan B One-Step available over-the-counter for all girls of reproductive age. *Id.* The Secretary overruled a determination made by the Commissioner of Food and Drugs and directed the FDA take an action in contravention of what the Commissioner and her staff had determined was appropriate. *See* FDA, Statement from FDA Commissioner Margaret Hamburg, M.D. on Plan B One-Step (Dec. 7, 2011) (ECF No. 339-2).

In their filings today, Plaintiffs seek immediate and permanent relief in the form of an order directing the FDA to permit, within 30 days, the drug sponsors of Plan B One-Step, Plan B, Next Choice, Perrigo R and D's Levonorgestrel Tablets, and any drug eligible for filing an abbreviated new drug application because of its equivalence to Plan B or Plan B One-Step, to make the above-referenced products available over-the-counter without age or point of sale restrictions. Secretary Sebelius's last-minute overruling of the FDA's decision on Plan B One-Step indicates that she could similarly assert that she has authority to make final decisions regarding other EC products and would not be bound by a court order granting such relief. Regardless of whether Secretary Sebelius has the authority to overrule such a court order, joinder is proper.

The supplemental complaint asserts against the Defendants a right to relief arising out of the same series of occurrences and presents questions of law and fact common to both the FDA and Secretary Sebelius. *See* Plaintiffs' Proposed Supplemental Complaint. All claims asserted against Secretary Sebelius in the supplemental complaint are identical to the claims asserted against the current defendant. These claims arise out of the continued unprecedented restrictions on over-the-counter access to emergency contraception, in the face of, and contrary to, scientific evidence supporting complete access. Therefore, claims against Secretary Sebelius and the

6

current Defendant turn on the same question of law and adjudication in one action promotes judicial economy for all parties involved. *See Clarkson,* 783 F. Supp. at 796-97. Accordingly, joinder is proper under Rule 20(a)(2).

In addition, it is possible that the relief Plaintiffs seek cannot be achieved, or that at the very least Secretary Sebelius would argue that it could not be achieved, unless Secretary Sebelius is joined as a defendant. Secretary Sebelius is subject to service of process and joining her will not deprive this Court of subject matter jurisdiction. Therefore, Plaintiffs' prompt request to join Secretary Sebelius after her unprecedented actions raised the specter of her preventing complete relief should be granted. *See* Fed. R. Civ. P. 19(a).

## Conclusion

Based on the foregoing, Plaintiffs respectfully request that this Court issue an Order permitting Plaintiffs to reopen this case, supplement the Fifth Amended Complaint, and join Kathleen Sebelius, in her official capacity as Secretary of the U.S. Department of Health and Human Services, as a defendant.

Dated:  February 8, 2012

Respectfully submitted,

*/s/ Suzanne Novak*
SUZANNE NOVAK
JANET CREPPS*
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600

*Attorneys for all Plaintiffs*

7

ANDREA COSTELLO*
Florida Institutional Legal Services
14260 W. Newberry Road, #412
Newberry, FL 32669
(352) 375-2494 x1012

*Attorneys for Plaintiffs*
*Tummino, Mahoney, Giardina,*
*Mangan, Seguin, Tinney, Brown*
*Churchill and Hunt*

*\*Admitted pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ANNIE TUMMINO, in her individual capacity, as Vice-Chair
of the Women's Liberation Birth Control Project, as
Coordinator of the Morning-After Pill Conspiracy, and on
behalf of women who need Emergency Contraception;
ERIN T. MAHONEY, in her individual capacity, as Chair of
the Women's Liberation Birth Control Project, as
Coordinator of the Morning-After Pill Conspiracy, and on
behalf of women who need Emergency Contraception;
CAROL GIARDINA, in her individual capacity, as                    CV-05-0366 (ERK/VVP)
Coordinator of the Morning-After Pill Conspiracy, and on
behalf of women who need Emergency Contraception;
KELLY MANGAN, in her individual capacity, as President of
the University of Florida Campus Chapter of the National
Organization for Women, as Coordinator of the Morning-
After Pill Conspiracy, and on behalf of women who need
Emergency Contraception; STEPHANIE SEGUIN, in her
individual capacity, as Chair of the Florida National
Organization for Women Young Feminist Task Force, as
Coordinator of the Morning-After Pill Conspiracy, and on
behalf of women who need Emergency Contraception;
LORI TINNEY, in her individual capacity, as President of the
Gainesville Chapter of the National Organization for
Women, as Coordinator of the Morning-After Pill
Conspiracy, and on behalf of women who need Emergency
Contraception; JENNIFER BROWN, in her individual
capacity, as Coordinator of the Morning-After Pill
Conspiracy, and on behalf of women who need Emergency
Contraception; CANDACE CHURCHILL, in her individual
capacity, as Coordinator of the Morning-After Pill
Conspiracy, and on behalf of women who need Emergency
Contraception; and FRANCIE HUNT, in her individual
capacity, as Coordinator of the Morning-After Pill
Conspiracy, and on behalf of women who need Emergency
Contraception; ASSOCIATION OF REPRODUCTIVE HEALTH
PROFESSIONALS, on its own behalf and on behalf of its
members and women who need Emergency Contraception;
and NATIONAL LATINA INSTITUTE FOR REPRODUCTIVE

HEALTH, on its own behalf and on behalf of women who
need Emergency Contraception; ROBERT JAFFE; AURORA
DEMARCO; ANGELICA JAFFE; CATHERINE LEDERER-
PLASKETT; ALIZA LEDERER-PLASKETT; JONATHAN MARKS;
GABRIELLE MARKS,

                            Plaintiffs,

v.

MARGARET HAMBURG, in her official capacity as
Commissioner of the Food and Drug Administration;
KATHLEEN SEBELIUS, in her official capacity as Secretary
of the Department of Health and Human Services,

                            Defendants.

---------------------------------------------------------------------------X

## SUPPLEMENTAL COMPLAINT

Plaintiffs, by and through their undersigned attorneys, hereby supplement their Fifth

Amended Complaint, and in support thereof aver the following:

1. Plaintiffs file this supplemental complaint to set forth events that have occurred since

this Court issued its March 2009 Order granting summary judgment in Plaintiffs' favor, and to

challenge Defendants' actions on remand following that Order as arbitrary and capricious in

violation of 5 U.S.C. § 706(2)(A).

2. The FDA's treatment of requests for over-the-counter access to emergency

contraception, both before and after this Court's Order, is a tale of unwarranted delays, denials,

and departures from normal procedures. It is also a quintessential example of continuing to

move the goalposts so that the desired goal—unrestricted over-the-counter access to a safe and

effective emergency contraception product—can never be attained.

2

3. The evidence of safety and efficacy of emergency contraception, which has been before the FDA for more than a decade, demonstrates that it should be made available without prescription or other restrictions to all women.

4. In its March 2009 Order, this Court granted Plaintiffs' motion for summary judgment and vacated the FDA's denial of a Citizen Petition seeking over-the-counter access to emergency contraception on the basis that the agency had acted in bad faith and in an arbitrary and capricious manner. Since then, Defendants have engaged in similar—and in some instances exactly the same—behavior that caused this Court to remand the matter in the first place.

5. Defendants' bad faith actions, including their establishment and maintenance of an age-restricted, behind-the-pharmacy-counter, dual prescription/nonprescription regime for emergency contraception, have caused and continue to cause significant harm to Plaintiffs and the public.

6. Plaintiffs seek: (1) immediate and permanent injunctive relief requiring Defendants to permit all levonorgestrel-based emergency contraception products to be made available to women of all ages without a prescription; (2) a declaratory judgment that the FDA's actions on remand with respect to the Citizen Petition and the Plan B One-Step supplemental new drug application, including but not limited to the denial of both, violated the Administrative Procedures Act; and (3) such other equitable relief as the Court may deem appropriate.

**I.     Defendant**

7. Kathleen Sebelius is the Secretary of the Department of Health and Human Services ("HHS"). Secretary Sebelius has asserted that she, as the person "responsible for executing" the Federal Food, Drug, and Comestic Act, has authority to overrule FDA drug approval decisions and to make final decisions regarding the over-the-counter availability of emergency

3

contraception. She participated in and directed FDA actions that Plaintiffs claim were arbitrary and capricious. She is sued in her official capacity.

## II.     Factual Allegations

### A.     Background

8.  In 2001, Plaintiff Association of Reproductive Health Professionals and sixty-five other organizations filed a Citizen Petition asking the FDA, in relevant part, to switch Plan B, a levonorgestrel-based emergency contraception product, and all and any new drug eligible for filing an abbreviated new drug application because of its equivalence to Plan B, from prescription-only to over-the-counter ("OTC") status.

9.  During the same period, the manufacturer of Plan B submitted a series of supplemental new drug applications ("SNDAs") in an attempt to have that drug switched to OTC status.

10. As far back as 2001, the FDA noted that the Citizen Petition met the criteria for unrestricted OTC availability and was supported by scientific data.

11. Numerous studies, including label comprehension and actual use studies, provided more than enough data to support the conclusion that all women, regardless of age, could understand the Plan B label and use the product safely and effectively without consultation with a practitioner.

12. The FDA, however, denied the Citizen Petition in 2006, claiming, *inter alia*, that it did not contain sufficient data to show that Plan B could be used safely and effectively by women under the age of 17. The FDA also denied two SNDAs from the drug sponsor requesting an OTC switch, claiming that there was insufficient data regarding adolescents.

4

13. The FDA eventually granted an SNDA in 2006, partially approving Plan B for OTC status, but with an unprecedented regime that required women under 18 to obtain a prescription for the product, Plan B to be sold only in pharmacies and health clinics, the drug to be kept behind the counter, and consumers to present government-issued identification to obtain the product (the "BTC regime").

14. In 2005, Plaintiffs filed this lawsuit, challenging, *inter alia*, the FDA's arbitrary and capricious actions and seeking to end the agency's refusal to follow the scientific evidence showing that OTC status is appropriate for Plan B.

**B.     This Court's March 2009 Order and Subsequent FDA Actions in Response**

15. On March 23, 2009, this Court granted summary judgment in Plaintiffs' favor (the "Order"), holding that the FDA's denial of the Citizen Petition's request for unrestricted OTC status for emergency contraception and its denials of successive applications from the Plan B drug sponsor violated the Administrative Procedures Act because these decisions were made in bad faith and were arbitrary and capricious. *Tummino v. Torti*, 603 F. Supp. 2d 519, 542, 544-49 (2009).

16. This Court found that the FDA's decision on Plan B was not the result of good faith decision making, took political considerations into account, had implausible justifications, and departed in significant ways from the agency's normal procedures for requested OTC switches.

17. Some of the departures from normal agency procedures the Court noted were: FDA upper management wresting control over the decision-making process from staff that normally would issue the final decision; the FDA denying full OTC access without age restriction against the recommendation of the scientific review staff; FDA staff discussing the OTC switch with the White House; and, the FDA insisting on additional data for adolescents even though data on

5

adolescents already existed and the FDA had a long history of extrapolating data from adults to adolescents, particularly with respect to contraception.

18. The Court found that the FDA's stated concerns about the inadequacy of data available for young adolescents and its focus on adolescent cognitive development in its evaluation of Plan B as an OTC drug, which resulted in a decision to approve OTC use of Plan B with an age restriction stemmed from political pressure rather than permissible health and safety concerns.

19. Based on these findings, the Court ordered the FDA to permit the Plan B drug sponsor to make Plan B available to 17 year olds without a prescription, under the same conditions that Plan B was then available to women over the age of 18. It further vacated the FDA's denial of the Citizen Petition and remanded the matter for reconsideration of the Citizen Petition and consideration of whether to approve Plan B for OTC status without age or point-of-sale restrictions.

20. The FDA complied with the portion of the Order requiring it to change the age cutoff from 18 to 17 within 30 days. It refused, however, to comply with the remainder of the Order.

21. Indeed, following remand from this Court, Defendants have continued to engage in arbitrary and capricious actions; the agency has ignored science and allowed politics to control its decision making regarding emergency contraception.

## C. The FDA's Plan for Complying with the Court Order to Reconsider the Citizen Petition Was Arbitrary and Capricious

22. For over two and a half years, the FDA refused to take any steps to reconsider the Citizen Petition. It argued that it could comply with the Court's Order by waiting indefinitely for and ruling on a drug application for a related levonorgestrel-based emergency contraception

6

product (Plan B One-Step), while at the same time refusing to apply the data from that application to the Citizen Petition.

23. This plan was made in bad faith, depriving Plaintiffs of a fair and honest consideration of the Citizen Petition.

24. Even if approval of the Plan B One-Step SNDA had been assured at the time the FDA made this plan, such action would still have deprived Plaintiffs of fair and honest consideration of the Citizen Petition.

25. Ruling on the Citizen Petition would have paved the way for full OTC status not only of Plan B, but of two levonorgestrel-based emergency contraception generic products currently marketed, as well as any new generics.

26. In contrast, approval of the Plan B One-Step SNDA would permit full OTC status only for Plan B One-Step, and prohibit other emergency contraception products from being available OTC for three years.

27. The FDA's admission that it planned to indefinitely ignore the Court's Order to reconsider the Citizen Petition prompted Plaintiffs to move for contempt.

**D.    The FDA's Denial of the Plan B One-Step SNDA Was Arbitrary and Capricious**

28. In February of 2011, the Plan B One-Step sponsor submitted an SNDA, including supporting studies, seeking to make One-Step OTC for all ages.

29. In communications that began years before this submission, the FDA informed the drug sponsor that it must include new adolescent-specific data with its SNDA.

30. The Plan B One-Step's drug sponsor bowed to the FDA's demands, worked closely with the FDA in devising studies, and conducted studies in which 680 adolescents participated.

The studies included a sample of subjects that allowed the researchers to conclude that the target population of the SNDA is able to correctly use emergency contraception in an OTC setting.

31. The data that was submitted to the FDA in support of the Plan B One-Step SNDA confirms what the previous studies regarding Plan B showed—that emergency contraception is safe and effective for women of all ages when self-administered. In particular, the actual use study on Plan B One-Step found that teens of all ages are capable of understanding the indications for emergency contraception and using it correctly.

32. On December 7, 2011, Dr. Margaret Hamburg, Commissioner of Food and Drugs, issued a statement in which she announced that the FDA's Center for Drug Evaluation and Research ("CDER") had completed its review of the Plan B One-Step SNDA. The statement set forth key conclusions that had been reached based on the data submitted, including that adolescent females could use Plan B One-Step properly without the intervention of a healthcare provider. She explained that CDER experts agreed that Plan B One-Step had met the OTC standards and should be approved for all women of child-bearing potential, and that her independent review confirmed that Plan B One-Step should be approved for OTC use without age restrictions.

33. On the same day, for apparently what is the first time, the Secretary of Health and Human Services, Defendant Kathleen Sebelius, asserted authority to overrule an FDA drug approval decision. She directed the FDA to deny Plan B One-Step's SNDA, stating that she "carefully considered FDA's Division Director Summary Review of Regulatory Action,," and, that based on that review, she "concluded that the data submitted for this product do not establish that prescription dispensing requirements should be eliminated for all ages."

8

34. In a public statement, Secretary Sebelius stated that the studies submitted with the SNDA "did not contain data for all ages for which this product would be available for use." She noted that "it is commonly understood that there are significant cognitive and behavioral differences between older adolescent girls and the youngest girls of reproductive age, which I believe are relevant to making this determination." Secretary Sebelius specifically noted that 10% of girls start menstruating at age 11.

35. Prior to Secretary Sebelius issuing her directive, there were communications between the White House Staff and her or her staff about the potential OTC switch for Plan B One-Step.

36. The actions and reasoning leading to the ultimate denial of the Plan B One-Step SNDA mirror the actions and reasoning that led to the denials of the earlier switch applications for Plan B that prompted this Court to rule that the agency's actions were arbitrary and capricious and taken in bad faith.

37. Actual use studies consider the way that the target population of a particular product will use that product. The actual use studies for Plan B One-Step did not include any 11 and 12 year olds because so few 11 and 12 year olds ever use emergency contraception. Even if the studies had included the rare 11 year old who seeks emergency contraception, the information gathered would not be particularly useful because no conclusions could be drawn about 11 year olds as a group given the incredibly small number of users that age.

38. The FDA typically does not require subjects of any particular age to be included in actual use studies. Indeed, it is unusual for actual use and label comprehension studies to include persons under 18. In fact, the Agency has a long history of extrapolating findings from clinical trials in older patients to adolescents.

Case 1:12-cv-00763-ERK-VVP   Document 1   Filed 02/16/12   Page 18 of 24 PageID #: 18
Case 1:05-cv-00366-E VVP   Document 345-1   Filed 02/06   Page 10 of 16 PageID #:
9186

39. A determination of whether a switch to OTC of a drug like Plan B is appropriate is normally handled at the Office Director level within the FDA and would not require approval or sign-off by a higher level official such as the Commissioner of Food and Drugs or the Secretary of Health and Human Services.

40. Decisions regarding OTC switches are not normally discussed with the White House.

41. When the agency has not been confident of the applicability of manufacturers' studies in OTC switches to younger consumers, it has required a label warning, rather than an age restriction or outright denial.

42. There is no justification for why the review of the Plan B One-Step SNDA differed in so many significant ways from the review of other switch applications.

### E. The Second Denial of the Citizen Petition Was Arbitrary and Capricious

43. Although the FDA had previously indicated to the Court that it would indefinitely defer reconsidering or ruling on the Citizen Petition because it believed a decision on Plan B One-Step SNDA would satisfy the Court's Order, it issued a denial of the Citizen Petition hours before argument on Plaintiffs' motion for contempt.

44. In remanding to the FDA to reconsider its decision on the Citizen Petition, this Court expressed trust that the newly appointed FDA leadership would "conduct a fair assessment of the scientific evidence." But the FDA chose to do no assessment whatsoever of the data related to the Citizen Petition and Plan B.

45. Rather, it drew conclusions about and denied the Citizen Petition regarding Plan B based on its review of the Plan B One-Step SNDA. According to the FDA: "[a]s a scientific matter, if additional data regarding the OTC use by younger women were needed for Plan B One-Step, that type of data would also be needed for Plan B, but those Plan B One-Step studies

10

would not be transferable to Plan B. Instead, there would need to be new studies conducted using Plan B and its labeling, because it has more complicated directions for use." The FDA concluded that the One-Step data was indeed necessary, and therefore that such additional data would be necessary to grant the Citizen Petition.

46. Years before the Plan B One-Step SNDA was submitted, however, the FDA had already concluded that additional data were necessary for the SNDA and communicated that conclusion to the Plan B One-Step sponsor.

47. Thus, the FDA's chosen course of action reveals a preordained determination that the FDA would not grant the Citizen Petition. Before the Plan B One-Step SNDA was even filed, the FDA had already determined that eventually it would: (1) deem the Plan B One-Step adolescent-specific data to be necessary; and (2) use that determination to conclude that the data supporting the Citizen Petition was insufficient.

48. The FDA further based its second denial on the vacated first denial, specifically the 2005 determination that the Citizen Petition/Plan B files could not support an OTC switch because of insufficient data on adolescents. These were the very findings that the Court had found to be infiltrated with politics, taken in bad faith, and arbitrary and capricious.

49. The FDA failed to give the Citizen Petition fair and honest consideration and departed from normal agency procedures by: (a) refusing to review the existing Citizen Petition/Plan B files to determine, *inter alia*, if sufficient data exists to support an OTC switch for all age groups; (b) denying the petition on the basis of determinations made regarding another product; and, (c) insisting on additional teen-specific data in support of the requested OTC switch.

50. There is no justification for such departures.

11

51. Moreover, the FDA's reasoning for denying the Citizen Petition for lack of additional, teen-specific data focusing on the two-pill nature of Plan B is simply implausible.

52. That the FDA deems a difference in dosage from one pill to two so "complicated" as to necessitate additional studies is simply not credible.

53. There are no specific documents or information that must be submitted with an OTC switch request. Actual use and label comprehension studies are not always required, particularly if a drug has previously been approved for OTC use, like levonorgestrel-based EC has been—in two-pill form—since 2006.

54. Moreover, the FDA has had sufficient evidence, including actual use and label comprehension studies that contained data on adolescents, to make emergency contraception available OTC for women of all ages since it began consideration of the matter. The data shows that there is no scientific basis for a distinction between adults and adolescents. This information is further supported by research on the oral contraceptive pill, which is arguably the most extensively studied medication in the history of pharmaceuticals.

F.     The Stark Contrast Between the FDA's Treatment of Emergency
       Contraception and Other OTC Switch Requests

55. Despite the abundance of evidence supporting OTC status for emergency contraception for women of all ages, the FDA has repeatedly stated that it does not believe sufficient evidence exists.

56. In contrast, it is rare for label comprehension and actual use studies to contain data on adolescents *at all*, and the FDA has granted OTC status to numerous drugs without such studies and with studies that do not contain data on adolescents.

57. The FDA has also approved OTC switches for numerous prescription drugs and classes of prescription drugs that could cause more severe side effects, even when they are used

12

according to approved directions, than could the correct, or even incorrect, use of Plan B.  Many

of those unrestricted OTC drugs pose special risks for certain populations, including certain age

groups.

58. Moreover, the FDA has approved full OTC switches for numerous prescription drugs

and classes of prescription drugs whose directions for approved use are far more complicated

than the directions for Plan B.

59. Ten years of delays, bad faith, political calculations and implausible reasoning

demonstrates that efforts to make emergency contraception available OTC and unrestricted have

not and will never be considered by the FDA in a fair, scientifically-based manner.

### G.    Harms Perpetuated by the FDA's Unprecedented Actions and Continuation of BTC Regime

60. All three levonorgestrel-based emergency contraception products currently marketed

in the United States are governed by the unprecedented FDA-imposed BTC regime.  Two of

them are generic equivalents to Plan B:  Next Choice and a product made by Perrigo R and D.

Each of these products consists of two pills of 0.75 mg of levonorgestrel each, which the drugs'

label directs women to take twelve hours apart.  The manufacturer of Plan B no longer markets

Plan B; since 2009, it has marketed Plan B One-Step, which is a single pill with 1.5 mg of

levonorgestrel.

61. The FDA-mandated BTC regime imposes significant barriers and harms on

consumers of emergency contraception, even those consumers who should be able to purchase it

OTC.  The FDA's delays and repeated arbitrary and capricious actions with respect to

emergency contraception have perpetuated those harms.  For example, permitting the product to

be available only at pharmacies and health clinics imposes practical obstacles to access.  Some

consumers do not live near such businesses.  Moreover, because pharmacies usually have limited

hours, consumers who attempt to buy emergency contraception at certain times can face significant delay.

62. The requirement that consumers show government-issued identification also creates a potentially insurmountable barrier for the many consumers who do not have such identification. It also has the effect of requiring consumers to reveal their identity in order to purchase a product, implicating privacy concerns.

63. In addition, the BTC regime is complicated and unique, and many pharmacists implement it incorrectly in ways that block consumers' access. A recent study found that a 17-year-old attempting to buy EC faces an approximately one-in-five chance of being given the incorrect information that she cannot obtain the drug without a prescription because of her age. And pharmacists are more likely to misinform young women about the age cutoff in low-income neighborhoods, perpetuating a pattern of poor access to health care for low-income populations.

64. The cumulative effect of the barriers erected by the BTC regime undoubtedly prevents some women from accessing the drug in the short time window in which it is effective, thereby exposing them to an increased risk of unwanted pregnancy and frustrating the very purpose of OTC access. As a public health issue, the adverse effect of the dual-label status in limiting access to emergency contraception is more detrimental to adults than younger patients because the vast majority of women who need emergency contraception are adults.

65. Plaintiffs face irreparable harm if they are not afforded immediate injunctive relief permitting drug sponsors to make levonorgestrel-based emergency contraception available OTC without restrictions.

66. The public interest weighs in favor of immediate injunctive relief.

14

67. Neither the FDA, nor the public, benefits from keeping in place barriers to women trying to access a safe method of birth control that must be taken as soon as possible to prevent an unwanted pregnancy.

**III.   Cause of Action**

### ARBITRARY AND CAPRICIOUS

68. Plaintiffs hereby incorporate by reference ¶¶ 1-67 above and Plaintiffs' Fifth Amended Complaint.

69. Defendants' actions upon remand, including the plan for complying with this Court's Order requiring it to reconsider the Citizen Petition by reviewing the Plan B One-Step SNDA, the execution of that plan (consideration and denial of the Plan B One-Step SNDA), and the 2011 denial of the Citizen Petition were arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, in violation of 5 U.S.C. § 706(2)(A). Among other violations, Defendants:

   a)  acted in bad faith;

   b)  was improperly motivated by factors other than medicine and science;

   c)  repeated the same departures from its normal procedures that this Court previously found arbitrary and capricious;

   d)  offered explanations for its decisions that run counter to the evidence before it;

   e)  offered explanations so implausible that it could not be ascribed to a difference in view or the product of agency expertise; and,

   f)  failed to provide a fair and honest consideration of the Citizen Petition

**IV.   Prayer for Relief**

WHEREFORE, Plaintiffs ask this Court:

70. To enter judgment declaring the FDA's actions on remand with respect to the Citizen Petition and the Plan B One-Step SNDA, including but not limited to the denial of both, in violation of 5 U.S.C. § 706;

71. To issue both a preliminary injunction and permanent injunction ordering Defendants to permit, within 30 days, the drug sponsors of Plan B One-Step, Plan B, Next Choice, Perrigo R and D's Levonorgestrel Tablets, and any drug eligible for filing an abbreviated new drug application because of its equivalence to Plan B or Plan B One-Step, to make the above-referenced products available over-the-counter without age or point of sale restrictions; and,

72. To grant such other and further relief as this Court should find just and proper, including attorneys' fees and costs.

Dated: February 8, 2012

Respectfully submitted,

/s/ Suzanne Novak
SUZANNE NOVAK
JANET CREPPS*
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600

*Attorneys for all Plaintiffs*

ANDREA COSTELLO*
Florida Institutional Legal Services
14260 W. Newberry Road, #412
Newberry, FL 32669
(352) 375-2494 x1012

*Attorneys for Plaintiffs*
*Tummino, Mahoney, Giardina,*
*Mangan, Seguin, Tinney, Brown*
*Churchill and Hunt*

*Admitted pro hac vice

16